IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MANPREET SINGH                                                               PETITIONER

VERSUS                                          CIVIL ACTION NO. 5:20-cv-96-DCB-MTP

SHAWN GILLIS                                                                 RESPONDENT

### ORDER

THIS MATTER is before the Court on Petitioner's Motion for Release from Detention or Bond [6]. Having carefully considered the parties' submission, the record, and the applicable law, the Court finds that the Motion [6] should be denied.

### BACKGROUND

Manpreet Singh, a citizen of India, challenges his continued immigration detention at the Adams County Detention Center ("ACDC"). After filing his Petition [1] for writ of habeas corpus, he filed the instant Motion [6] requesting bond. Petitioner asserts that he suffers from asthma and, therefore, must be immediately released from custody due to his vulnerability if he contracts COVID-19. He contends that ICE's detention centers are ill-equipped to manage an infectious disease outbreak and that "the medical systems in the rural communities surrounding [ACDC] have limited capacity to provide emergency and intensive medical care." Mot. [6] at 10. Immediate release on bond is necessary, in Petitioner's opinion, because his health could possibly decline. *Id*. at 18.

At the time of filing the Motion [6], Petitioner represented that there were nine active cases of COVID-19 at ACDC. On May 6, 2019, however, when Shawn Gillis filed his Response [13], the active cases at ACDC had declined to four.

Shawn Gillis, the Warden of ACDC, opposes Petitioner's request to be released pending a determination of his petition. Respondent argues that Petitioner has not satisfied the stringent test for bond in habeas proceedings and that ACDC has taken and is taking meaningful steps to reduce the spread of COVID-19 in the facility.

In support of the Response [13], a declaration from Robert Hagan, Acting Assistant Field Director for ICE, was attached. Resp. [13], Ex. A. The declaration outlines the protocols in place at ACDC to prevent the spread of COVID-19. Each detainee is screened for disabilities upon admission and reasonable accommodations are provided, as medically appropriate. *Id*. at 2. During intake, detainees are also screened for COVID-19 symptoms and asked to confirm whether they have been exposed to confirmed cases of COVID-19. *Id*.

Detainees who exhibit symptoms of the virus are placed in isolation and tested. *Id*. Detainees with suspected and confirmed cases of COVID-19 are placed in single-cell isolation pods and their meals and medical care occur in the isolation pod. *Id*. at 3. When the staff interacts with these detainees they wear full PPE. *Id*. As of May 6, 2020, there were four confirmed cases of COVID-19 at ACDC and zero suspected cases. *Id*.

ACDC is not overcrowded. The facility can house 2,300 detainees and currently houses 811. *Id*. at 4. Each pod currently houses 50-80 detainees. *Id*. In most instances, there are enough beds that a detainee does not have to share a bunk bed with another detainee. *Id*.

One pod in the facility has produced positive COVID-19 cases. *Id*. Petitioner is housed on this pod and it has remained quarantined since a positive case was found. *Id*. All the positive cases, however, were moved to a separate isolation unit after they were suspected of having COVID-19. *Id*.

Social distancing is encouraged while the detainees eat and engage in recreation. *Id*. In instances where social distancing cannot be maintained, such as at the barbershop or congregational programs, such activities have been suspended. *Id*.

ACDC has also increased sanitation efforts. *Id*. at 5. Cleaning cycles have been increased and ACDC uses bleach and other chemicals. *Id*. Surfaces that are high contact, such as door handles, are cleaned every hour. *Id*. Hand sanitizer has also been placed throughout the facility. *Id*.

Traffic into the facility has decreased. All non-legal visits have been suspended and all staff and vendors who enter the facility are screened and have their body temperature checked. *Id*. Employees who exhibit symptoms or who may have come into contact with infected individuals are sent home. *Id*.

Petitioner filed his Motion for Release from Detention or Bond [6] on April 29, 2020. Shawn Gillis filed his Response [11] on May 11, 2020. Petitioner then filed his Reply on May 18, 2020. This matter is ripe for review.

## ANALYSIS

Petitioner cites to *Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974) to argue that he must be granted a bond pending the determination of his Petition [1] to safeguard the Court's ability to rule on the merits of his Petition. In *Calley*, the Fifth Circuit considered a petition for habeas corpus filed by a post-conviction military prisoner who wanted to remain confined on house arrest instead of being transferred to the disciplinary barracks at Fort Leavenworth, Kansas. The district court released the petitioner on a $1,000 bond pending determination of his habeas petition. *Id*. at 702. The Fifth Circuit reversed the district court and found that release on a bond was not justified. *Id*. at 703.

While the Fifth Circuit has not explicitly extended *Calley* to apply in alien habeas petitions, this same standard has been applied by the Second Circuit when considering bail for an alien challenging his detention through a habeas petition. *See Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001). Additionally, the standard set forth in *Mapp* has been applied by district courts within this circuit in alien habeas petitions. *See Sacal-Micha v. Longoria*, 2020 WL 1518861, at *3 (S.D. Tex. Mar. 27, 2020); *Sanchez v. Winfrey*, 2004 WL 1118718 (W.D. Tex. Apr. 28, 2004); *Brown v. Miller*, 2014 WL 4929294, at *6 n.5 (W.D. La. Oct. 1, 2014).

The Fifth Circuit articulated a two-part test to apply when a considering bond for a petitioner bringing a habeas matter. First, the petitioner must raise substantial constitutional claims in his petition on which he has a high probability of success. *Calley*, 496 F.2d at 702. Second, there must also be extraordinary or exceptional circumstances which make the grant of bail necessary to make the habeas remedy effective. *Id*.

Examples of an extraordinary circumstance include the serious deterioration of a petitioner's health while incarcerated, a short sentence for a minor crime that is so near completion that extraordinary action is necessary to make collateral review effective, or an exceptional delay in processing a habeas corpus petition. *Id*. at n.1; *see also Beasely v. Stephens*, 623 F. App'x 192 (5th Cir. 2015); *Kennedy v. Adler*, 35 F. App'x 386 (5th Cir. 2002); *Glidden v. Sparkman*, 2012 WL 2577530, at *1 (S.D. Miss. May 31, 2012).

Petitioner has not demonstrated that an extraordinary circumstance exists that warrants his release pending a decision on his habeas petition. Petitioner has not shown that his health has declined, but only that he may face health issues in the future. While the Court is sympathetic to the many challenges faced by individuals during the COVID-19 pandemic, it appears that ACDC has taken and continues to take meaningful steps to prevent the spread of the virus.

The Court does not find an extraordinary circumstance warranting release, as contemplated by the Fifth Circuit in *Calley*. *See also Sacal-Micha*, 2020 WL 1518861 at *5 ("accepting [petitioner's] reasoning would logically require the release of all individuals currently detained who are elderly or suffer from certain underlying medical conditions. The law does not require such a generalized result").

The Court need not reach the first prong of the *Calley* test because Petitioner has not prevailed on the second prong, as discussed above. *See Nelson v. Davis*, 739 F. App'x 254 (5th Cir. 2018) (declining to reach the merits of a bond appeal when the petitioner failed to demonstrate extraordinary or exceptional circumstances). Even so, while Petitioner has raised substantial issues for consideration and briefing continues, the Court is not convinced at this stage that he has a high probability of success.

IT IS, THEREFORE, ORDERED that Petitioner's Motion [6] for Release from Detention or Bond is DENIED. The Petition [1] remains pending and the issues presented will be addressed in due course following the submission of supplemental briefs.

THIS the 4th day of June, 2020.

s/ Michael T. Parker  
United States Magistrate Judge